UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANGELA WHITE,<br><br>                Plaintiff,<br><br>        v.<br><br>JO ANNE B. BARNHART,<br>COMMISSIONER OF THE SOCIAL<br>SECURITY ADMINISTRATION,<br><br>                Defendant. | No. CV 04-470-PJW<br><br>MEMORANDUM OPINION AND ORDER |

## I.

## INTRODUCTION

Plaintiff applied for supplemental security income ("SSI") benefits, alleging disability due to back problems and depression. Defendant Social Security Administration (the "Agency") denied her application. She then asked for and was granted a hearing before an Administrative Law Judge ("ALJ"). After hearing the evidence, the ALJ denied Plaintiff's application, finding that, though she suffered from a bad back and depression, she still retained the capacity to perform some jobs. The ALJ's decision was affirmed by the Appeals Council and Plaintiff then filed the instant action seeking to overturn the Agency's decision.

After reviewing the record and considering the arguments of counsel, the Court concludes that the ALJ erred when he failed to call a vocational expert to determine whether Plaintiff's depression limited the number of jobs she could perform. For that reason, the case is remanded to the Agency to allow the ALJ to hold another hearing and call a vocational expert to testify about whether Plaintiff's depression and related limitations decreased the number of jobs she could find.

## II.

## SUMMARY OF FACTS AND PROCEEDINGS

Plaintiff was born in 1954 and was 48 years old at the time of the Administrative hearing. She has a fifth grade education and prior work as a care-giver (for her 92-year-old great grandmother). At the time of the hearing she was caring for a 15-year-old nephew who lived in her home.

Plaintiff suffers from extensive back problems, which cause her chronic pain. She had surgery on her back (a laminectomy and a spinal fusion) in 1998. She was in a car accident in 1999 and suffered a slip and fall in 2001, both of which aggravated her back condition. She also suffers from degenerative disc disease.

Plaintiff also suffers from depression, though the doctors disagree as to how severe her condition is and whether it includes psychotic features. She has treated her depression with counseling and medication, which appear to control it at least to some degree.

The present application for SSI is Plaintiff's third. Her two prior applications were denied in 1992 and 1999. She filed the present application in 2001. Along with her application, she

submitted a disability report in which she claimed that she could not stand for more than one minute, could not walk for more than two minutes, and could not sit for more than ten minutes.

Plaintiff was the sole witness at the administrative hearing. She testified to her various infirmities, including bi-polar disorder, back problems, insomnia, and anxiety.

Thereafter, the ALJ issued a decision denying Plaintiff's application.  He found that, though Plaintiff suffered from back problems and depression, both of which were severe impairments, she was still able to perform light work with simple instructions and limited contact with the public and co-workers.  (AR 18.)  The ALJ then applied the Grids and determined that there were a sufficient number of jobs in the economy that she could perform.[1]  (AR 18.)

Plaintiff challenges the ALJ's decision.  She contends that he failed to assign appropriate weight to her treating psychiatrist's opinion that she suffered from depression with psychotic features. Plaintiff also contends that the ALJ erred when he failed to call a vocational expert.

                                III.

                              ANALYSIS

A.    Standard of Review

"Disability" under the applicable statute is defined as the inability to perform any substantial gainful activity because of "any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to

---

[1] The term "Grids" is shorthand for the medical-vocational guidelines, found in Appendix 2 of 20 C.F.R. Part 404 Subpart P.

1  last for a continuous period of not less than twelve months." 42
2  U.S.C. § 1382c(a)(3)(A).  The Court may overturn the ALJ's decision
3  that a claimant is not disabled only if the decision is not supported
4  by substantial evidence or is based on legal error.  *See Magallanes v.*
5  *Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).
6       Substantial evidence "'means such relevant evidence as a
7  reasonable mind might accept as adequate to support a conclusion.'"
8  *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consol. Edison*
9  *Co. v. NLRB*, 305 U.S. 197, 229 (1938).)  It is "more than a mere
10 scintilla but less than a preponderance," *Tidwell v. Apfel*, 161 F.3d
11 599, 601 (9th Cir. 1998), and "does not mean a large or considerable
12 amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).
13      "The Court must uphold the ALJ's conclusion even if the evidence
14 in the record is susceptible to more than one rational
15 interpretation."  *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595,
16 599 (9th Cir. 1999).  Indeed, if the record evidence can reasonably
17 support either affirming or reversing the Agency's decision, this
18 Court must not substitute its judgment for that of the ALJ.  *See*
19 *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the ALJ
20 committed error but the error was harmless, reversal is not required.
21 *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th
22 Cir. 2004)(applying the harmless error standard).
23 B.   The ALJ Erred By Not Calling A Vocational Expert
24      The ALJ's conclusion that Plaintiff could find work in the
25 economy was based on his application of the Grids.  Plaintiff claims
26 it was error to rely solely on the Grids.  The Court agrees.  As
27 explained below, where, as here, the claimant suffers from severe,
28 non-exertional limitations which would diminish the number of jobs she

1  could perform under the Grids, the ALJ may not simply rely on the
2  Grids.  Instead, the ALJ must call a vocational expert to evaluate how
3  Plaintiff's non-exertional limitations would impact the number of jobs
4  available to her.  The ALJ failed to do so, and remand is required.
5       It is clear from this record that Plaintiff suffers from
6  depression.  All of the doctors in this case found so.  The ALJ
7  concluded that Plaintiff's depression amounted to a severe impairment
8  (AR 15), which, under the Regulations, meant that her depression
9  significantly limited her ability to do basic work activities.  *See* 20
10 C.F.R. §§ 416.920(c) and 416.921.  More specifically, the ALJ
11 concluded that Plaintiff's depression caused slight restrictions in
12 activities of daily living, moderate difficulties in social
13 functioning, and moderate deficiencies in concentration, persistence,
14 and pace.  (AR 18.)  The ALJ also limited Plaintiff to jobs involving
15 simple instructions and precluded her from jobs involving extensive
16 contact with the public and co-workers.  (AR 18.)  The ALJ then
17 applied the Grids and concluded that Plaintiff could work.  (AR 18.)
18      The Grids do not apply to claimants who suffer from non-
19 exertional limitations which significantly limit their ability to
20 work.  *See Holohan v. Massanari*, 246 F.3d 1195, 1208-09 (9th Cir.
21 2001)(holding ALJ erred in relying on the Grids where Plaintiff
22 suffered from depression); *Reddick v. Chater*, 157 F.3d 715, 729 (9th
23 Cir. 1998)(explaining ALJ may not rely exclusively on the Grids where
24 Plaintiff suffers from non-exertional limitations and must, instead,
25 call a vocational expert to testify).  Depression is a non-exertional
26 limitation.  *See Holohan*, 246 F.3d at 1208 (citing 20 C.F.R.
27 § 404.1569a(c)(i)-(iii)).  Plaintiff's depression significantly
28

limited her ability to work.[2] As such, the ALJ erred when he used the Grids in this case because Plaintiff's depression was not accounted for in the Grids. For example, the ALJ determined that Plaintiff was precluded from working at jobs involving extensive contact with the public and with co-workers. The Grids do not account for this limitation. The ALJ determined that Plaintiff had moderate deficiencies in concentration, persistence, and pace. Again, there is no evidence as to how many jobs under the Grids would be ruled out as a result of these non-exertional limitations. A vocational expert is needed to address these issues.

The Agency argues that the ALJ did not have to call a vocational expert because most of the jobs under the Grids for the light work category involve simple duties with minimal contact with the public and with supervisors. Defendant contends that Plaintiff should be able to perform these jobs. It cites a 22-year-old Ninth Circuit case for the proposition that a vocational expert is not required in this situation. *See Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir. 1983). In doing so, it ignores the fact that the Ninth Circuit held more recently in *Holohan*, *Reddick*, and others that the Agency was required to call a vocational expert in this situation. The Agency's argument is not well-taken and is rejected out-of-hand. There is no evidence

---

[2] The Agency argues that the fact that the ALJ found at step two that Plaintiff's depression was severe, *i.e.*, significantly limited her ability to work, should not control the determination at step five that her depression significantly limited her ability to work. The Court need not resolve this quandary here. Even assuming that the Agency's argument is right, the evidence in this record establishes that Plaintiff's depression would significantly impact her ability to perform some jobs at the light level, necessitating the testimony of a vocational expert to explain the extent of the impact.

6

Case 2:04-cv-00470-PJW   Document 20   Filed 08/23/05   Page 7 of 10   Page ID #:25

in this record as to the number of jobs Plaintiff cannot perform as a result of her limitations. In the absence of this evidence, the Court will not assume that there is a sufficient number of jobs she can do.

C.   <u>The Treating Psychiatrist's Opinion</u>

Plaintiff's treating psychiatrist opined that Plaintiff suffered from depression with psychotic features, which, Plaintiff contends, automatically precluded her from working. Plaintiff claims that the ALJ rejected this opinion and relied, instead, on the opinion of an examining psychiatrist who believed Plaintiff's depression did not preclude her from working. Plaintiff argues that this was error. As set forth below, the record does not support Plaintiff's contention that the ALJ rejected her treating psychiatrist's opinion. Further the treating psychiatrist's records make clear that Plaintiff's depression was controllable with medication and treatment. Thus, the ALJ's conclusion that Plaintiff could work is not contradicted by the treating psychiatrist's opinion and will not be overturned.

In general, the treating physician's opinion is accorded the most weight in analyzing a claimant's disability in a social security case. *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1036 (9th Cir. 2003). This is because the treating physician generally has the most contact with the claimant over the greatest period of time and is presumably in the best position to evaluate the claimant's condition. *Id.* at 1038. Further, the treating physician is usually retained to cure the patient. *Id.* Thus, his or her opinion is presumably not motivated by any extraneous factors.

Plaintiff argues here that the ALJ improperly rejected his treating psychiatrist's, Dr. King's, opinion. The record does not support this claim. The ALJ noted in his decision:

7

1     Controlling [weight] is given to the clinical and diagnostic
2     findings of claimant's treating physicians and specialists
3     and her subjective complaints to a limited extent pursuant
4     to the regulations and Social Security Ruling 96-7p, in
5     reaching these findings.
6 (AR 18.)

7     Thus, the record contradicts Plaintiff's claim that the ALJ
8 rejected Dr. King's opinion.  Further, nothing in the ALJ's decision
9 that Plaintiff could work runs counter to Dr. King's views.  He
10 diagnosed Plaintiff with major depression with psychotic features and
11 treated her for this condition with drugs and therapy.  By all
12 accounts, including Plaintiff's own statements to Dr. King, the
13 treatment was effective and controlled her condition.  (AR 233, 257.)

14     Plaintiff argues that the ALJ overlooked Dr. King's assessment of
15 Plaintiff's GAF of 40.[3]  Though the ALJ did not specifically address
16 the score, which was attributed to Plaintiff when she first sought
17 treatment from Dr. King, it was consistent with Dr. King's other
18 findings at the outset of his treatment of Plaintiff and, in this
19 case, did not require a separate analysis.

20     The GAF scale is used by clinicians to report an individual's
21 overall level of functioning and to make treatment decisions.  *See*
22 *DSM-IV* at 32.  A GAF score may indicate problems that do not
23 necessarily relate to the ability to hold a job.  *See id.*  In this

---

[3] The Global Assessment of Functioning ("GAF") scale is used by clinicians to report an individual's overall level of functioning. *See American Psychiatric Association, Diagnostic & Statistical Manual of Mental Disorders* (Text Revision 4th ed. 2000)("*DSM-IV*") at 32.  A GAF of 40 indicates "some impairment in reality testing and communication . . . or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood. . . ."  *Id.*

case, Plaintiff's GAF score of 40 in October 2001, by itself, did not mean that Plaintiff could not work in September 2003, when the ALJ issued his decision. Nor does it undermine the ALJ's ultimate conclusions concerning the seriousness of Plaintiff's mental condition. *See*, *e.g.*, *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002)(holding that "ALJ's failure to reference the GAF score in the RFC, standing alone, does not make the RFC inaccurate"). Accordingly, the ALJ did not err by failing to explain his reasons for disregarding Plaintiff's GAF score. *See Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003)(finding that the ALJ does not need to discuss every piece of evidence in the record).

The ALJ addressed Plaintiff's treatment by Dr. King, emphasizing that the chart notes documented Plaintiff's improvement throughout the course of her treatment when she was compliant with her medication and treatment. (AR 17.) These chart notes were significantly more reliable indicators of Plaintiff's mental health than the snapshot created by the GAF assessment on October 19, 2001, at the outset of her care. Thus, in the context of this case, based on the medical records reviewed by the ALJ, the Court concludes that the ALJ's failure to specifically discuss the GAF score does not necessitate reversal.

Finally, Plaintiff complains that her medical records from Dr. King that post-dated the ALJ's decision--which set forth that Plaintiff was suffering from depression with psychotic features--provide new and different evidence that she is disabled and require remand to the Agency for consideration of the new evidence. Again, the Court disagrees. The new records from Dr. King are not substantially different from the old records. Dr. King had diagnosed

1  Plaintiff with major depression with psychotic features before the
2  ALJ's decision.  (AR 233.)  In fact, the ALJ made note of this in his
3  decision.  (AR 17 ("Although there are some diagnoses of major
4  depression with psychotic features, most of the diagnoses and
5  the claimant's symptoms are that of major depression.").)  Further,
6  the Appeals Council considered these records and determined that they
7  did not provide a basis for changing the ALJ's decision.  (AR 4-5).
8  This Court agrees.  For these reasons, Plaintiff's claim that the ALJ
9  improperly rejected the treating psychiatrist's opinion is denied.

## IV.

## CONCLUSION

Because Plaintiff's non-exertional limitations limited the number of jobs she could perform in the light category of work, the ALJ was required to call a vocational expert to analyze Plaintiff's prospects for employment.  The ALJ's failure to do so amounts to reversible error.  For this reason, the case is remanded to the Agency for further proceedings consistent with this opinion.

IT IS SO ORDERED.

DATED:    August  23  , 2005.


                                    /s/
                                    PATRICK J. WALSH
                                    UNITED STATES MAGISTRATE JUDGE

S:\PJW\Cases-Soc Sec\WHITE, A 470\Memo_Opinion.wpd